# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BRENDA G. BLEVINS,**
**Claimant Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-56**          (JCN: 2021009597)

**PRINCETON COMMUNITY HOSPITAL ASSOCIATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brenda G. Blevins appeals the January 19, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Princeton Community Hospital Association ("PCHA") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which denied reopening the claim for temporary total disability ("TTD") benefits and denied authorization for a referral to a rheumatologist, a C-PAP machine, Melatonin, Spiriva inhaler, and Prednisone.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the outset, we note a few things about Ms. Blevins' preexisting medical history. In November of 2016, Ms. Blevins treated with Kelsey Mills, PA-C, after having been diagnosed with bronchitis. Ms. Blevins noted that she was finishing a round of Prednisone and had not yet begun taking Singulair. Ms. Mills suspected that Ms. Blevins had underlying asthma and referred her to an allergy and asthma specialist. Ms. Mills also recommended a pulmonary function test and a course of Singulair. Later in November, Ms. Blevins treated with Ryan T. Runyon, D.C., with complaints of dyspnea/shortness of breath

---

[1] Petitioner is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Respondent is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

[2] The Board also affirmed a claim administrator's order which denied adding dyspnea as a compensable condition in the claim. However, Ms. Blevins states that she does not appeal that decision.

1

and wheezing. Dr. Runyon suspected a pulmonary embolism and recommended several tests, stating he would refer her to a pulmonologist if her condition did not improve.

On December 6, 2016, Ms. Blevins was examined by Tarun M. Kumar, M.D., at the Asthma & Allergy Center in Charleston, West Virginia. Ms. Blevins complained of shortness of breath and wheezing, and she indicated a twenty-five-year history of smoking one pack of cigarettes a day, though she quit smoking eight to ten years prior. Pulmonary function testing showed normal airflow. Dr. Kumar diagnosed intermittent asthma, allergic rhinitis due to animal hair and dander, allergic rhinitis due to pollen, other allergic rhinitis, and cough.

Medical records from 2017 indicate that Ms. Blevins was referred to a pulmonologist for exertional dyspnea and that she continued to experience occasional wheezing. In February of 2018, Ms. Blevins returned to an allergy center with complaints of wheezing, shortness of breath, and coughing. At that time, Ms. Blevins was taking Augmentin, Prednisone, and Tessalon for cough and had received steroid injections. She was directed to complete her course of Prednisone and start Symbicort. By May of 2018, Ms. Blevins was experiencing an improvement in her symptoms and reported no wheezing or shortness of breath, though she continued to take Symbicort for asthma. In April of 2019, Ms. Blevins sought treatment for cough and allergies, but denied wheezing and shortness of breath. She was diagnosed with bronchitis and asthma.

Turning to the instant claim, Ms. Blevins was exposed to and contracted Covid-19 during her employment in October of 2020. Ms. Blevins was admitted to Charleston Area Medical Center from October 26, 2020, through October 28, 2020, and was diagnosed with acute respiratory failure with hypoxia, SARS-associated coronavirus infection, pneumonia due to human coronavirus, history of cardiac arrhythmia, and asthma. Ms. Blevins presented to the emergency room at Princeton Community Hospital on October 29, 2020, and was admitted through October 31, 2020. She was diagnosed with pneumonia due to Covid-19, asthma, and respiratory failure with hypoxia.

Ms. Blevins returned to Princeton Community Hospital on November 20, 2020, due to complaints of chest pain. A chest CT scan was performed, and the impression was suboptimal opacification of the pulmonary arteries without definite emboli, minimal scanty residual infiltrates in the left upper lobe, and a significant decrease in the bilateral pulmonary infiltrates when compared with prior imaging studies. On December 2, 2020, Ms. Blevins saw Rachel Ann Leonard, M.D., a pulmonologist at WVU Medicine, and complained of persistent fatigue, dyspnea, cough, intermittent chest pains, and exertional dyspnea. Dr. Leonard noted that Ms. Blevins had undergone a Troponin EKG, which showed that the left ventricle ejection fractions were preserved with the "only abnormality being hypertension." Dr. Leonard opined that Ms. Blevins' "constellation of symptoms" were related to post-Covid infection, superimposed on a history of asthma. Dr. Leonard

recommended adding Spiriva to Ms. Blevins current Symbicort and Singular regimen. Per Ms. Blevins' request, Dr. Leonard also referred her to a cardiologist.

By order dated February 15, 2021, the claim administrator held the claim compensable for exposure to Covid-19. On March 11, 2021, Ms. Blevins sought treatment from John Turski III, D.O. Ms. Blevins stated that she had returned to work in PCHA's laundry facility but could not tolerate the work due to her continued symptoms. Ms. Blevins complained of low-grade fevers, brain fog, and malaise, and requested a referral to a dermatologist due to hair loss. Dr. Turski diagnosed Covid-19, post-Covid syndrome, gastro-esophageal reflux disease without esophagitis, anxiety, fatigue, hair loss, and neuropathy. Dr. Turski opined that Ms. Blevins could return to work with modifications.

Ms. Blevins returned to Dr. Turski for a follow-up on April 15, 2021. Ms. Blevins reported that she was seeing a neurologist and also reported feelings of malaise and generally feeling ill but that "it just goes away." Dr. Turski diagnosed post-Covid syndrome, neuropathy, malaise, and anosmia, and noted that he would request a referral to a second neurologist for Ms. Blevins' complaints of brain fog and phantom smells.

On April 19, 2021, Rebecca Thaxton, M.D., performed a physician review in which she was asked to address whether a neurology referral for brain fog and anosmia post-Covid should be authorized and whether certain medications not relevant to this appeal should be authorized.[3] Dr. Thaxton opined that the neurology referral should be authorized, as Ms. Blevins' medical history indicated a diagnosis of post-Covid (or long-Covid) syndrome.

On April 29, 2021, Ms. Blevins again followed-up with Dr. Turski and complained that her toes were getting blisters and her mouth was developing sores. On May 5, 2021, Ms. Blevins was examined by Sunil Sharma, M.D., and Edward Rojas, M.D. Ms. Blevins reported that her oxygen would drop when lying flat and when she exerted herself, and that she experienced shortness of breath with no clear trigger. She also reported a sporadic rash. Drs. Sharma and Rojas suspected that Ms. Blevins had sleep apnea and ordered a sleep study. They also diagnosed mononeuritis multiplex, asthma, "COVID toes," and hypoxemia.

Sayanika Kaur, M.D., a rheumatologist, evaluated Ms. Blevins on May 26, 2021, for neuropathy and pain associated with post-Covid syndrome. Ms. Blevins reported shortness of breath, dry eyes and mouth, hair loss, sore throat, color change in hands, blisters on her feet, feelings of inflammation, fatigue, erythema of her joints, pain that "travels from area to area," knee pain, and blood pressure issues. Dr. Kaur opined that it

---

[3] Dr. Thaxton recommended that an antihistamine, a decongestant, and a cough suppressant be authorized, but stated that Albuterol should not be authorized as it was a pre-claim medication prescribed for Ms. Blevins' asthma.

was possible to develop an autoimmune disease after having Covid-19, though she did not diagnose Ms. Blevins with any autoimmune disease, and she recommended that Ms. Blevins be vaccinated against Covid-19, regularly take Aspirin, and use topical steroid creams. Dr. Kaur ordered additional lab work and an EMG study.

Ms. Blevins underwent an EMG on June 3, 2021, which was interpreted as "an essentially normal study." According to the EMG report, there was no evidence of generalized peripheral neuropathy. On August 20, 2021, Ms. Blevins underwent a sleep study which revealed that she had mild obstructive sleep apnea. Dr. Turski completed a diagnosis update form on August 30, 2021, requesting that post-Covid syndrome and dyspnea be added as compensable conditions in the claim. On September 3, 2020, Dr. Turski requested a referral to a rheumatologist to evaluate joint problems related to post-Covid syndrome and a C-pap machine due to postural orthostatic tachycardia syndrome ("POTS"), post-Covid syndrome, and sleep apnea.

Dr. Thaxton performed a physician review dated September 9, 2021, wherein she addressed (1) whether post-Covid syndrome and dyspnea should be added to the claim, (2) whether a referral to a rheumatologist for joint problems post-Covid should be authorized, and (3) whether the request for a C-pap machine should be authorized. Dr. Thaxton opined that post-Covid syndrome should be added to the claim, but that dyspnea was a symptom, not a diagnosis, and should not be added—though she opined that it would be covered as a symptom under post-Covid syndrome. Dr. Thaxton opined that the referral to a rheumatologist should be denied. According to Dr. Thaxton, Ms. Blevins had already seen a rheumatologist and was not diagnosed with any rheumatology disorder, nor was any follow-up suggested from that prior appointment. Lastly, Dr. Thaxton recommended against authorizing a C-pap machine, stating that the C-pap machine would be related to Ms. Blevins' diagnosis of obstructive sleep apnea, which was not directly or causally related to the claim.

On October 12, 2021, Ms. Blevins was examined by Christopher Martin, M.D. Dr. Martin was also asked to provide an opinion on whether post-Covid syndrome and dyspnea should be added to the claim, whether a referral to a rheumatologist should be authorized, and whether a C-pap machine and Melatonin should be authorized. Dr. Martin agreed with Dr. Thaxton's recommendation that post-Covid syndrome be added to the claim. He further agreed that dyspnea is a symptom and not a diagnosis but that, as a symptom, it is covered under post-Covid syndrome. Dr. Martin likewise opined that a referral to a rheumatologist was not medically necessary. Dr. Martin noted that Ms. Blevins had already seen a rheumatologist twice and no rheumatological condition was diagnosed. Dr. Martin also recommended against authorizing a C-pap machine, noting that Dr. Turski had diagnosed obstructive sleep apnea, which relates to soft tissues obstructing the airway. Dr. Martin stated that he was not aware of any connection between obstructive sleep apnea and post-Covid syndrome and opined that the condition was more likely related to Ms. Blevins' body habitus. As such, Dr. Martin also recommended against authorizing Melatonin, as Dr.

4

Turski had diagnosed primary insomnia when prescribing the medication and, therefore, it was not considered medically necessary for the accepted conditions in the claim.

By order dated October 26, 2021, the claim administrator added the diagnosis of post-Covid syndrome to the claim but denied the request to add dyspnea to the claim, a referral to a rheumatologist, a request for a C-pap machine, and a request for Melatonin. The Encova Select Grievance Board issued a determination on December 1, 2021, finding that the claim administrator's October 26, 2021, order should be affirmed.

On March 24, 2022, Dr. Thaxton performed a physician review and was asked to comment on whether Prednisone should be authorized in the claim. Dr. Thaxton opined that the request for Prednisone was based on a new acute infection and would not be directly or causally related to the claim.

Ms. Blevins treated with Amirahwaty Abdullah, M.D., a pulmonologist, on July 18, 2022. Ms. Blevins' primary complaint was anterior chest pain which she described as "burning and pressure," though she also complained of dyspnea, rashes, joint swelling, and mouth ulcers. After examination, Dr. Abdullah diagnosed Ms. Blevins with (1) possible asthma or chronic obstructive pulmonary disease ("COPD") with dyspnea, (2) persistent chest pain without etiology identified, (3) possible component of connective tissue disease with multi-joint and skin problems, and (4) "COVID long Hauler." Dr. Abdullah noted that the plan would be a referral to a rheumatologist and immunology "placed at patient's request," a short Prednisone taper pack, and to continue using the Spiriva inhaler "since it gives benefit."

Shortly thereafter, on July 25, 2022, Ms. Blevins and Dr. Turski completed a Claim Re-opening Application for TTD benefits, noting a worsening in Ms. Blevins' post-Covid syndrome symptoms. Dr. Turski also listed the following diagnoses in the request: elevated C-reactive protein, vasculitis, dyspnea, and autoimmune connective tissue disorder. Dr. Turski noted a severe exacerbation in symptoms such as rash, ulcers, chest pain, hot flashes, dyspnea, and weakness since July 13, 2022, and opined that Ms. Blevins was unable to return to work. He also requested an immunologist and rheumatologist consultation.

On August 4, 2022, Dr. Thaxton completed another physician review, wherein she was asked to address the request to authorize the Spiriva inhaler and Prednisone in the claim. Dr. Thaxton opined that the medical evidence did not support authorizing these medications. Specifically, she noted that Dr. Abdullah recommended Prednisone and a Spiriva inhaler for "asthma vs. COPD." Dr. Thaxton explained that Ms. Blevins "had pre-existing asthma and ongoing treatment for that will not always fall under this claim." By three separate orders dated August 5, 2022, the claim administrator denied authorization of the Spiriva inhaler and Prednisone and denied the request to reopen the claim for TTD benefits.

5

George L. Zalvidar, M.D., performed an independent medical evaluation of Ms. Blevins on September 28, 2022. Dr. Zalvidar examined Ms. Blevins and conducted a six-minute walk test, and his findings were normal. Dr. Zalvidar explained that "from the pulmonary standpoint, she does not need any respiratory therapy or any limitation" and that "[a]s far as her pulmonary system is concerned, she does not need treatment. There are no limitations to her pulmonary system." Dr. Zalvidar noted that Ms. Blevins did have tachycardia but opined that it was related to her severe anxiety.

On October 17, 2022, Dr. Turski authored correspondence indicating that Ms. Blevins had been under his care since November 6, 2020, and that she was unable to return to work due to her "Post-Covid Syndrome that has resulted in her permanent disability." Dr. Turski noted the various referrals he had requested, including duplicates "to provide a second opinion."

Dr. Zaldivar also authored correspondence on October 17, 2022. Dr. Zaldivar opined that Ms. Blevins' complaints of dyspnea were related to her anxiety or deconditioning, stating that she does not have any pulmonary disease which would cause shortness of breath. Indeed, Dr. Zaldivar opined that Ms. Blevins did not have asthma, that her lungs were normal, and that she did not need Prednisone or a Spiriva inhaler. Dr. Zaldivar also opined that Ms. Blevins' obstructive sleep apnea was due to her obesity and that a C-pap machine would not be related to her Covid-19 diagnosis. Lastly, Dr. Zaldivar opined that, rather than a visit to a rheumatologist, Ms. Blevins would benefit from an appointment with a post-Covid clinic.

By order dated January 19, 2023, the Board affirmed the claim administrator's various orders denying the requested medical treatment and denying the application to reopen the claim for TTD benefits. The Board found that Dr. Turski's request for a C-pap machine was for the diagnoses of POTS, post-Covid syndrome, and sleep apnea. The Board noted that neither POTS nor sleep apnea were compensable conditions and pointed out that Drs. Martin and Zaldivar attributed her sleep apnea to her obesity. The Board further noted that Dr. Martin stated he was unaware of any connection between sleep apnea and post-Covid syndrome. As such, the Board concluded that the C-pap machine was requested for non-compensable conditions.

The Board also affirmed the claim administrator's order denying the request for Melatonin. The Board noted that Dr. Turski requested Melatonin to aid with Ms. Blevins' sleep problems and that the request was based on a diagnosis of primary insomnia, which was not compensable. The Board likewise found that the request for a referral to a rheumatologist was not supported by the evidence, as Ms. Blevins had twice been seen by a rheumatologist and her lab work showed low suspicion for rheumatologic disease.

The Board affirmed the claim administrator's order denying Prednisone, noting that Dr. Turski requested the medication for a diagnosis of bronchitis. The Board noted that

6

bronchitis is not compensable, and, in fact, Prednisone had been prescribed to Ms. Blevins prior to her contracting Covid-19 for acute bronchitis and asthma with shortness of breath. Regarding the Spiriva inhaler, the Board found that Dr. Abdullah requested the medication for dyspnea which he related to her asthma or COPD, which were non-compensable. As such, the Board concluded the claim administrator had not erred in denying the Spiriva inhaler.

Lastly, the Board affirmed the claim administrator's order denying the request to reopen the claim for TTD benefits. The Board noted that Ms. Blevins returned to work in March of 2021 and continued working until Dr. Turski took her off work on July 25, 2022, citing a progression and/or aggravation of her compensable injury. The Board found that Dr. Turski listed several non-compensable diagnoses on the claim reopening application. Dr. Turski also requested the referral to the rheumatologist on the claim reopening application, which the Board noted it had denied. Accordingly, the Board concluded that the evidence did not establish that Ms. Blevins' compensable conditions were the cause of her inability to work as of July 25, 2022, and had failed to show an aggravation and/or progression of the compensable conditions. Ms. Blevins now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Ms. Blevins argues that the Board's decision is clearly wrong because the preponderance of the evidence demonstrates that the requested referrals and medical treatment are medically related and reasonably required to treat her compensable condition of post-Covid syndrome. According to Ms. Blevins, Dr. Turski was in the best position to

7

determine her course of treatment as he had been treating her since shortly after she contracted Covid-19. Ms. Blevins argues that the record is replete with evidence of her ongoing dyspnea, joint pain, skin lesions/sores, and sleep apnea, which began after contracting Covid-19.

While Ms. Blevins acknowledges that she had preexisting intermittent asthma, she argues that her symptoms of shortness of breath had been controlled since May of 2018. Moreover, both Dr. Thaxton and Dr. Martin agreed that treatment of her symptoms of dyspnea should covered under the claim. As such, Ms. Blevins contends the Board was clearly wrong in denying treatment of dyspnea, such as the Spiriva inhaler and Prednisone, when both of these medications were related to breathing issues she suffered after contracting Covid-19 and when there was no evidence that she was exhibiting such symptoms immediately prior to the compensable injury.

Ms. Blevins further argues that the Board erred in denying authorization for a C-pap machine and Melatonin. Dr. Turski attributed Ms. Blevins' need for the C-pap machine and Melatonin to her post-Covid syndrome, noting that she had sleep problems due to pain after having Covid-19 and that there was no evidence of prior sleep issues. According to Ms. Blevins, the Board erred in relying on Dr. Martin's opinion that her sleep apnea was due to her obesity, without any supporting evidence, when he had evaluated her only once. Ms. Blevins avers that, if her body habitus were the cause of her sleep apnea, she would have been diagnosed with it prior to contracting Covid-19. Ms. Blevins concludes that because the evidence demonstrates that she did not suffer from sleep apnea prior to contracting Covid-19 and because she now suffers from sleep apnea due to pain from the compensable injury, both a C-pap machine and Melatonin should have been authorized.

Regarding authorization to see a rheumatologist, Ms. Blevins argues that Dr. Turski recommended another referral in order to obtain a second opinion. Dr. Turski witnessed Ms. Blevins' health issues stemming from post-Covid syndrome and believed that a second opinion from a rheumatologist "could be of some help." According to Ms. Blevins, the Board erred in relying on the opinions of Drs. Martin and Thaxton that Ms. Blevins did not need a referral to a rheumatologist given that she had already seen two during the proceedings. Ms. Blevins argues that this "completely disregards the fact that Dr. Turski clearly found that [her] condition has progressed to the point that he believes another opinion . . . is necessary."

Lastly, Ms. Blevins argues that the Board erred in denying her request to reopen the claim for TTD benefits. Ms. Blevins states that Dr. Turski opined that she could not work starting on July 25, 2022, due to a progression and/or aggravation of her compensable injury, which included rashes, ulcerations, chest pain, hot flashes dyspnea, and weakness. Further, Dr. Turski listed post-Covid syndrome and dyspnea among the diagnoses on her reopening application. The Board erred in disregarding Dr. Turski's opinion simply because he included other non-compensable diagnoses on the application, and it is clear

8

that he believed them to be related to Ms. Blevins' post-Covid syndrome diagnosis. Because the evidence indicates that Ms. Blevins' health has "continued to spiral" and that she cannot work due to the compensable injury, the Board erred in denying her request to reopen the claim for TTD benefits.

West Virginia Code § 23-4-3(a)(1) (2005) provides that the claim administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Here, Ms. Blevins' claim was held compensable for exposure to Covid-19 and post-Covid syndrome. While Ms. Blevins argues that Dr. Turski requested a C-pap machine due to her post-Covid syndrome, in his request he listed POTS and sleep apnea along with post-Covid syndrome. Neither POTS nor sleep apnea is compensable in the claim, and Drs. Martin and Zaldivar opined that sleep apnea was related to her body habitus rather than the compensable injury. Dr. Thaxton also opined that Ms. Blevins' obstructive sleep apnea diagnosis was not related to her compensable injury, and Dr. Martin opined that there was no known connection between sleep apnea and post-Covid syndrome. Accordingly, the Board did not err in denying authorization of a C-pap machine, as it was not medically necessary or reasonably related to treat the compensable injuries.

We also find that the Board was not clearly wrong in denying the requested medications (Melatonin, Spiriva inhaler, and Prednisone) given the evidence that they were requested for non-compensable conditions. As noted by the Board, Dr. Turski requested Melatonin to treat Ms. Blevins' non-compensable sleep apnea. Indeed, Dr. Turski listed a diagnosis of primary insomnia, rather than post-Covid syndrome, in requesting Melatonin. Moreover, though Dr. Abdullah requested the Spiriva inhaler due to Ms. Blevins' dyspnea symptoms, he did not attribute the dyspnea to post-Covid syndrome. Rather, he attributed it to Ms. Blevins' asthma or COPD diagnoses, neither of which are compensable. Likewise, Dr. Turski requested Prednisone to treat Ms. Blevins' bronchitis, which was not compensable. Ms. Blevins has a long history of recurrent bronchitis for which she has been prescribed Prednisone, and Dr. Thaxton opined that the request for Prednisone was based on a new acute infection rather than the compensable injury. Accordingly, we find that Ms. Blevins is entitled to no relief in this regard.

We further agree with the Board's decision to deny authorization for a referral to a rheumatologist. While Ms. Blevins argues that Dr. Turski believed that a referral for a second opinion "could be of some help," the record demonstrates that Ms. Blevins twice saw a rheumatologist (with the most recent time being one month prior to the new request) and neither time was she diagnosed with any rheumatological disease, nor was any follow-up recommended. No other medical physician of record recommended a third referral to a rheumatologist. Moreover, as noted by the Board, Ms. Blevins' lab work was unremarkable and showed low suspicion for rheumatologic disease. Given this evidence, we cannot find that the Board was clearly wrong in denying the request for a referral to a rheumatologist.

9

Lastly, the Board was not clearly wrong in affirming the claim administrator's order denying the request to reopen the claim for TTD benefits. In order to reopen a claim for TTD benefits, a claimant must show an aggravation or progression of a compensable condition or facts not previously considered. *See* West Virginia Code § 23-5-2 (2005) and § 23-5-3 (2021). Here, the Board found that in completing the reopening application, Dr. Turksi listed several diagnoses that were not compensable and, as such, failed to show any progression or aggravation directly related to the compensable injury. We agree, especially considering the opinions of the various medical professionals that Ms. Blevins' ongoing symptoms were related to her preexisting asthma, body habitus, or anxiety. As such, we cannot find that the Board was clearly wrong in its decision.

Accordingly, based on the foregoing, we affirm the Board's January 19, 2023, order.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating.

10